**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANGELLA MARIE SWICK, | ) | CASE NO. 3:23-CV-2192 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

## I.      INTRODUCTION

The Commissioner of Social Security denied Plaintiff Angella Marie Swick's ("Ms. Swick's") application for Supplemental Security Income (SSI) benefits.[1] Ms. Swick seeks judicial review of that decision pursuant to 42 U.S.C. § 1383(c)(3). (Compl., ECF No. 1.) The parties have consented to a magistrate judge exercising jurisdiction over the case pursuant to 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and Local Rule 73.1. (ECF No. 8.)

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision denying Ms. Swick's application for benefits.

## II.     PROCEDURAL HISTORY

In December 2019, Ms. Swick applied to the Social Security Administration (SSA) seeking SSI benefits; she claimed that she became disabled on September 28, 2018. (Tr. 363–71, 396–404.)[2] She identified eight conditions that limit her ability to work: degenerative disc disease,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.

[2] The administrative transcript appears at ECF No. 6. The Court will refer to pages within that transcript by identifying the Bates number printed on the bottom right-hand corner of the page (e.g., "Tr. 60"). The Court will refer to other documents in the record by their CM/ECF document numbers (e.g., "ECF No. 9") and page-identification numbers (e.g., "PageID# 2948").

fibromyalgia, arthritis, asthma, tendonitis, nerve damage, "degenerative neck disease," and vision problems.

In April 2020, the agency notified Ms. Swick that she did not qualify for SSI payments because she was not disabled.

Ms. Swick submitted a request for reconsideration in May 2020, informing the agency that her degenerative disc and joint disease and arthritis had been "flar[ing] up" in 2020 and that in April 2020 she experienced "[p]ossible shin splints." (Tr. 175–77, 411.) She further noted that she had undergone magnetic-resonance imaging in February 2020 and had consulted with doctors in April and May 2020 for pain management and for injections of vitamin B12. (Tr. 412–13.) She stated that she was "having troubling completing activities of daily life in a timely manner." (Tr. 414.)

On October 26, 2020, SSA sent Ms. Swick notice that a state physician and disability examiner reviewed her claim; the agency determined that its previous decision was correct. (Tr. 178–80.) The agency explained that Ms. Swick had enough strength and movement to sit, stand, move, and walk in order to perform some types of work. (Tr. 180.)And despite her mental health conditions, the agency determined that she was able to interact with others, act in her own interest, and follow and understand instructions.

On November 10, 2020, Ms. Swick requested a hearing with an administrative law judge (ALJ). (Tr. 184–86.)

The ALJ held a hearing on May 6, 2021. (Tr. 76–92.) The ALJ issued a decision on May 17, 2021, finding that Ms. Swick was not disabled. (Tr. 142–58.)

On July 6, 2021, Ms. Swick requested that the SSA Appeals Council review the ALJ's decision; she merely referred the council to her pre-hearing brief. (Tr. 277–79, 361–62.)

On May 10, 2022, the Appeals Council remanded the matter back to the ALJ, ordering (1) further consideration of Ms. Swick's physical impairments and residual functional capacity in light of a severe wrist impairment; (2) further evaluation of the criteria in 20 CFR Part 404, Subpart P, Appendix I, §§ 11.04 and 11.14 in light of the severe wrist impairment and a severe brain impairment; (3) further explanation regarding the ALJ's consideration of Ms. Swick's symptoms; and (4) further development and evaluation of Ms. Swick's past work activity since 2008. (Tr. 159–64.)

The ALJ held a second hearing on September 26, 2022. (Tr. 48–75.)

On October 6, 2022, the ALJ issued his decision, again finding that Ms. Swick was not disabled. (Tr. 14–47.)

On September 13, 2023, the Appeals Council denied Ms. Swick's request to review the ALJ's decision. (Tr. 1–6.)

Ms. Swick filed her complaint seeking judicial review of that decision on November 9, 2023. (Compl., ECF No. 1.) She raises the following assignment of error:

> The ALJ erred not only in failing to find any severe mental impairments at Step 2 but also by failing to account for Plaintiff's mental limitations at any subsequent steps in the sequential evaluation process.

(Pl.'s Merits Br., ECF No. 9, PageID# 2948.)

## III.    FACTUAL BACKGROUND[3]

### A.    Ms. Swick's 2016 Application for Supplemental Security Income

Ms. Swick applied for SSI benefits on June 16, 2016, alleging a disability beginning on the same day due to fibromyalgia, arthritis, a herniated disc, carpal tunnel on the right hand, asthma,

---

[3] At the administrative level, Ms. Swick alleged a variety of physical and mental impairments. In this proceeding, Ms. Swick challenges only the ALJ's determinations with respect to her mental impairments and limitations. Accordingly, the Court focuses on the evidence regarding those impairments.

rotator cuff tendonitis, gastroesophageal reflux disease (GERD), lumbago, fatigue, anxiety, and arthritis in her neck. (Tr. 18, 96, 104.)

On October 18, 2016, Jerome Zake, Ph.D., evaluated Ms. Swick in connection with her 2016 application for benefits. (Tr. 479.) Dr. Zake concluded that Ms. Swick presented with symptoms of a moderate-to-severe somatic symptom disorder and opined that her prognosis "appeared guarded." (Tr. 483.) Dr. Zake assessed that Ms. Swick had "difficulty concentrating on mental alertness activities" and appeared to have "a low frustration tolerance when interacting with others"; he opined that she would have "increased levels of frustration and dysphoria when confronted with stress" in a work setting. (*Id.*)

On October 2, 2018, an ALJ denied Ms. Swick's June 2016 application, finding that she was not disabled. (Tr. 93–118.) The ALJ identified that Ms. Swick had severe impairments, including certain physical conditions and "psychological conditions variously described as somatic symptom disorder and depression with anxiety." (Tr. 99.) The ALJ identified that Ms. Swick also had a number of non-severe physical impairments. (Tr. 99.)

The ALJ nevertheless found that Ms. Swick was not disabled. As for Ms. Swick's psychological conditions, the ALJ found that Ms. Swick's mental impairments were not serious and persistent and did not cause at least one "extreme" or two "marked" limitation under the Paragraph B criteria of the relevant impairment listings. (Tr. 101–03.) The ALJ concluded that Ms. Swick's mental impairments limited her "to simple tasks with a routine work setting that is repetitive with few and expected changes, so no frequent changes in pace, and only occasional interaction with others." (Tr. 108.)

Even considering these limitations and the physical limitations the ALJ found, the ALJ determined that Ms. Swick's residual functional capacity was sufficient for Ms. Swick to

4

successfully adjust to certain unskilled occupations at the sedentary exertional level. (Tr. 110.)

Specifically, the ALJ made the following finding:

> [Ms. Swick] has the residual functional capacity to perform sedentary work . . . except: [she] can sit for 6 hours out of an 8-hour workday and can stand and/or walk for 6 hours out of an 8-hour workday. She must have the ability to alternate between sitting and standing, at her option, every 30 minutes for 1–2 minutes so long as she is not off task or has to leave the vicinity of the workstation. [She] can never climb ladders, ropes, or scaffolds and can occasionally climb ramps and stairs. She can frequently handle and finger with the dominant right upper extremity. She can have occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants. She cannot walk on uneven terrain or work around unprotected heights or unprotected moving mechanical machinery. She cannot be exposed to more than moderate noise . . . . She cannot perform work that requires monocular vision. While the claimant can avoid ordinary hazards in the workplace . . ., she cannot see such hazards if using only her left peripheral vision. **[She] can understand, remember, and carry out simple, routine tasks, make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. [She] cannot engage in direct public service work and can only be in the proximity of the general public on an occasional basis. She can have occasional interaction with supervisors and coworkers with no team or tandem tasks.**

(Tr. 103–04) (emphasis added).

Ms. Swick requested that the Appeals Council review that decision; in connection with that request, she submitted medical records dated in December 2018 and January 2019. (*See* Tr. 120.) On October 7, 2019, the Appeals Council denied Ms. Swick's request to review the decision. (Tr. 119–24.) The Council reasoned that the additional medical records she submitted were obtained after the ALJ issued its decision, and therefore were not relevant to the Council's review of that decision. (*See* Tr. 120.)

Ms. Swick did not seek judicial review of that decision. (Tr. 18.)

### B.    The Current Application for Supplemental Security Income

#### 1.    Personal, Educational, and Vocational Experience

Ms. Swick was born in 1972 and was 47 years old on the date of her application. (Tr. 363.) She earned a GED diploma. (Tr. 80.) She lives alone. (Tr. 79, 364.) While she previously worked as a home healthcare aid, babysitter, and housekeeper (Tr. 55–59), since at least 2017 she has worked only a few days a month doing light housecleaning work for one client. (Tr. 59.)

#### 2.    Relevant Hearing Testimony

##### a.    *Ms. Swick's Testimony*

The ALJ asked Ms. Swick what problems were keeping her from working full-time; she responded as follows:

> Well, I have several. I can't sit for too long. I can't stand for too long. I can't walk too much. I don't do well on stairs. The pushing and pulling, I can't do that. I think that's about it.

(Tr. 80.)

Ms. Swick, responding to questions from the ALJ and her counsel, testified to a number of physical complaints related to physical pain (a seven out of ten most days) and discomfort stemming from various physical conditions. (*See* Tr. 80–87.) She offered no testimony about any mental impairments or limitations. (*See id.*) She then testified as follows:

> [Ms. Swick's Counsel]: Is there anything else that we didn't discuss that you feel the judge needs to be aware of, as to why you wouldn't be able to work full-time?
>
> [Ms. Swick]: I don't think so.

(Tr. 87.)

At the second hearing, Ms. Swick responded to questions from the ALJ and her counsel and testified about her work history; she spoke in more detail about the physical limitations caused by the pain brought on by her physical conditions. (Tr. 55–65.)

When asked why she feels she cannot work full-time, Ms. Swick described that she cannot handle the physical requirements of most jobs, gets tired around midday, and begins to get too tired to function; the pain grows "all over." (Tr. 65.) She then said, "I get frustrated, I don't want to be around people, I get irritated," and "I don't want people near me." (*Id.*)

In response to further questions, Ms. Swick described that she feels irritated every day. (Tr. 67.) She has no trouble focusing or concentrating "at first," but after a time she needs to get up and move around because of the pain from her physical limitations. (*See id.*) The pain issues "get frustrating" and "overwhelming." (*Id.*)

### b.  *Vocational Experts*

Vocational expert Cathy Giedeman testified at the first hearing in response to several hypothetical questions posed by the ALJ. The hypotheticals posed by the ALJ included limitations on exertional level (light and sedentary) with various additional physical and environmental limitations. (*See* Tr. 88–90.)  The ALJ did not pose any hypothetical questions that included a mental or social limitation. (*See id.*)

The expert testified that employees in a competitive environment can be off task for no more than ten percent of the day and can be absent no more than once or twice a month (and even then, not consistently) to maintain employment. (Tr. 90.)

Ms. Swick's counsel asked no questions of the expert.

At the second hearing, vocational expert Ginny Speelman classified Ms. Swick's previous work history as "home attendant," "child monitor," and "housekeeping cleaner." (Tr. 70.) The ALJ then posed a number of hypothetical questions to the expert, including limitations on exertional level (light and sedentary) with various additional physical and environmental limitations. (Tr. 71–74.)

The ALJ posed a hypothetical question with certain physical limitations, and the additional limitation that the hypothetical individual "can understand, remember, and carry out simply instructions for work," and "is capable of using judgement to make simple, work-related decisions, with occasional changes in a routine work setting." (Tr. 72.) The expert testified that there were jobs at the light and sedentary levels, even considering those limitations on the complexity of the work, including "order clerk," "document preparer," and "inspector." (Tr. 72–73.)

### c. *Medical Expert*

Dr. Vladimir Karpitskiy testified as a medical expert at the second hearing before the ALJ. Dr. Karpitskiy testified that he reviewed certain medical records and determined that Ms. Swick has certain physical impairments that should result in certain physical limitations. (Tr. 52–53.) He also testified that he observed, in the records, that Ms. Swick's orthopedic surgeon noted significant stabilization in her physical conditions, yet Ms. Swick continued to undergo numerous invasive medical procedures. (Tr. 53–54.) Dr. Karpitskiy noted that Ms. Swick had been diagnosed with somatic symptom disorder, but he was hesitant to opine on Ms. Swick's "willingness to go through all these procedures" because he was not a psychiatrist. (*Id.*)

Ms. Swick's counsel did not ask Dr. Karpitskiy any questions.

### 3. <u>State Agency Medical Consultants</u>

In April 2020, a disability examiner (Amy Curry) and a physician (Leslie Green, M.D.), reviewed the record at the initial administrative level. (Tr. 125–32.) After their review, the agency determined that Ms. Swick was not disabled, adopting[4] the residual-functional-capacity findings from the agency's October 2, 2018 decision and concluding that Ms. Swick could perform

---

[4] Dr. Green noted that the ALJ's findings were adopted pursuant to the Social Security Administration's Acquiescence Ruling 98-4. *See* SSAR 98-4(6), 63 Fed. Reg. 29771 (June 1, 1998).

unskilled sedentary work like that required of "document preparer[s]," "Hand Mounter[s]," and "Semi conductor bonder[s]." (Tr. 125, 131–32.)

In July 2020, physician Maureen Gallagher, D.O. reviewed the record at the reconsideration level. (Tr. 133–41.) Dr. Gallagher determined that evidence submitted after the ALJ's October 2018 decision "include[d] new and material information," and therefore she decided not to adopt the ALJ's residual-functional-capacity findings. (Tr. 139.) Dr. Gallagher concluded that several of Ms. Swick's symptoms had materially improved. Specifically, she concluded that Ms. Swick now has a normal gait and "good strength," such that the previous "[s]it/stand option" was "no longer supported by medical records." (*Id.*) Dr. Gallagher further concluded that that the previous "[m]anipulative limitation" was no longer supported because at a follow-up appointment in December 2019 Ms. Swick reported "that her arm pain was better after surgery." (*Id.*)  Finally, Dr. Gallagher concluded that "[left] eye limitations" were no longer supported because Ms. Swick's "[s]table branch retinal vein occlusion of the [left] eye" had "been resolved," according to notes from an ophthalmology appointment in December 2019 that mentioned that Ms. Swick's vision was "stable." (*Id.*)

Based on these conclusions, Dr. Gallagher revised Ms. Swick's residual functional capacity as follows: Ms. Swick had no manipulative, visual, or communicative limitations; she also had no postural limitations related to her balance. She had the ability to frequently lift and carry objects weighing up to 10 pounds, and occasionally she could lift and carry up to 20 pounds. (Tr. 138–39.) She had the ability to stand and walk for about six hours in an eight-hour workday, with normal breaks. (*Id.*) She could sit for about six hours in an eight-hour workday, with normal breaks. (*Id.*) She could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl. (*Id.*) She should never climb ropes, ladders, or scaffolds. (*Id.*) She had no environmental limitations, except that

she should "[a]void [c]oncentrated [e]xposure" to "[h]azards" like "machinery" and "heights." (Tr. 139.) Dr. Gallagher specified that Ms. Swick should not be exposed to "dangerous machinery" or "unprotected heights." (*Id.*)

The agency noted on reconsideration that its initial review was completed without a psychological clinical evaluation; the evaluation appeared to have been cancelled and never rescheduled. (Tr. 135.)

Daniel Watkins, Ph.D. evaluated Ms. Swick on October 1, 2020. (Tr. 138, 1209.) During that evaluation, Ms. Swick denied "any history of psychiatric illness or behavioral health treatment" and was "fairly adamant that her disabilities are physical in nature." (Tr. 1211.) Ms. Swick denied taking psychoactive medication and said she has never been hospitalized for psychiatric treatment. (*Id.*) Dr. Watkins evaluated that Ms. Swick was cooperative and that her thought processes were "logical, coherent and goal directed." (*Id.*) She appeared "a bit irritable." (Tr. 1212.)

Dr. Watkins diagnosed Ms. Swick with an adjustment disorder "w[ith] some irritability." (Tr. 1213.) In making this diagnosis, Dr. Watkins opined that:

> The claimant does not appear to be exhibiting any major mood disorder, anxiety disorder, thought disorder, personality disorder, or psychosis. She may be experiencing some ongoing adjustment problems and responses to various stressors including chronic pain, health problems, and financial limitations.

(*Id.*)

Dr. Watkins determined that Ms. Swick had an adequate "ability to sustain attention and concentration for the purposes of evaluation" and opined that her ability "appear[ed] to be adequate for the purposes of an ordinary eight hour day given appropriate tasks falling within her physical limitations," although he noted that Ms. Swick "may at times be distracted by pain." (Tr. 138.) He further explained that one could "expect sp[or]adic, mild to moderate limitation in this area (social)

10

due to irritability associated in part w[ith] pain." (*Id.*) He concluded that Ms. Swick appeared "capable of coping w[ith] a load for moderate pressure work setting." (*Id.*)

Kristen Haskins, Psy.D., completed an evaluation on October 23, 2020. (Tr. 137.) Dr. Haskins noted that Ms. Swick had been diagnosed with an adjustment disorder "with some irritability." (*Id.*) Dr. Haskins opined that this mental health condition was not severe. (*Id.*) Dr. Haskins noted that Ms. Swick was "adamant that her disabilities were physical in nature," and Ms. Swick denied taking medications to manage her mental health symptoms. (*Id.*)

### 4. **Relevant Medical Evidence**

The agency transcript includes medical records for Ms. Swick dating back to at least October 2017. (*See* Tr. 492.) Instead of identifying each instance where a physician evaluated Ms. Swick from that date without identifying psychiatric complaints or concerns (*see, e.g.*, *id.*), the Court notes that it reviewed these records and—unless otherwise noted—no physician identified a psychiatric concern or reported a psychiatric complaint. (*See also, e.g.*, Tr. 492, 493, 506, 512, 522, 531, 548, 553, 558, 584–85, 589–90, 595, 600, 606–07, 612, 616, 621, 624, 628, 634, 639, 644, 649, 655, 659–60, 665, 670, 672, 1259–60, 1299, 1304–05, 1309, 1315–16, 1396, 1438, 1447, 1452–53, 1464, 1469–70, 1482, 1499, 1518, 1528, 1534, 1546, 1552, 1563, 1575, 1582, 1593, 1605–06, 1612, 1632, 1642, 1649–50, 1655–56, 1669, 1675–76, 1681–82, 1695, 1702–03, 1708–09, 1739–40, 1745–46, 1757–58, 1766, 1773–74, 1795) (noting normal, at times even "cooperative" and "pleasant" mood and affect, as well as other normal psychiatric conditions).

Ms. Swick reported "anxiety/nervousness" and "depression" during a consultation with Dr. John Dooner on June 30, 2017. (Tr. 1502.)

In November 2017, Matthew Nienberg, a nurse practitioner, evaluated that Ms. Swick was nervous or anxious during a consultation. (Tr. 1428.) But Mr. Nienberg's evaluation revealed that

11

Ms. Swick was alert and oriented, attentive and appropriate, and "constitutionally normal," with normal mood and affect under the circumstances; she answered questions appropriately and demonstrated appropriate cognitive reasoning and understanding. (Tr. 1429.)

In October and November 2017, Ms. Swick reported worsening depression and anxiety to a certified nurse practitioner, Moe Jallad. (Tr. 1287–88, 1293–96.) The nurse practitioner offered Ms. Swick a selective serotonin reuptake inhibitor, which she declined, and recommended counseling. (Tr. 1290.)

In March and July 2018, Ms. Swick consulted with Dr. Mamon Maiteh. (Tr. 1270, 1276, 1282.) Ms. Swick denied anxiety or depression. (Tr. 1271–72, 1277, 1282.)

In October 2018, Ms. Swick consulted with Juli Smelser, a certified nurse practitioner. (Tr. 1261.) Ms. Swick again denied anxiety or depression. (Tr. 1263.)

In January 2019, Ms. Swick consulted with Kirt Munson, a nurse practitioner. (Tr. 1254.) Ms. Swick denied anxiety or depression at that appointment. (*Id.*) At each of these appointments, Ms. Swick declined an SSRI.

In February 2019, a neurologist identified that Ms. Swick reported "irritability" and denied confusion or difficulty concentrating. (Tr. 1076, 1802.) The doctor's examination revealed that Ms. Swick was alert and answered questions appropriately "with clear and fluent speech." (*Id.*)

Mr. Nienberg noted no psychiatric or behavioral concerns during an evaluation on February 19, 2019; her psychiatric condition was normal during his evaluation. (*See* Tr. 1088.)

When Mr. Nienberg examined Ms. Swick on March 14, April 18, May 21, July 9, 2019, her psychiatric condition was unchanged. (Tr. 1097, 1107–08, 1117–18, 1127–28.)

Ms. Swick consulted with Kirt Munson, a nurse practitioner, on April 2, 2019. (Tr. 1247.) Mr. Munson described Ms. Swick as "pleasant" and did not note any psychiatric concerns. (Tr. 1249–51.)

Mr. Nienberg noted that Ms. Swick was "agitated" during evaluations on August 1 and September 5, 2019. (Tr. 564, 576, 1137, 1146–47.) But during his evaluations he noted that on each date Ms. Swick was alert and oriented, attentive and appropriate, and "constitutionally normal," displaying normal mood and affect under the circumstances and answering questions appropriately. (*Id.*) Ms. Swick demonstrated appropriate attention, cognitive reasoning and understanding; there were no obvious defects noted with her memory, reasoning, or intellect. (*Id.*)

Ms. Swick consulted with Dr. Biyani on September 12, 2019. (Tr. 696.) Ms. Swick reported that she has "difficulties with memory" as the result of a stroke. (*Id.*) But Dr. Biyani evaluated Ms. Swick and found her to be cooperative, alert, and oriented. (*Id.*) Dr. Biyani ultimately scheduled Ms. Swick for surgery to address a physical condition.

In September 2019, before the surgical procedure, Ms. Swick expressed anxiety about the procedure and asked her doctor to order her "sterile scrubs" because she did not trust the hospital to ensure a sterile surgical environment. (Tr. 554.)

On October 10, 2019, a certified nurse practitioner noted that Ms. Swick's mood was "impulsive" and she was "somewhat agitated" after the procedure because she wanted to smoke a cigarette and was denied permission; she yelled at doctors and was ultimately discharged. (Tr. 534–37, 541.)

In November and December 2019, Ms. Swick consulted with Dr. Biyani to follow up on the procedure. (Tr. 694–95.) Dr. Biyani noted that Ms. Swick was alert, oriented, and cooperative during each appointment. (*Id.*) While she still had some pain, she was "doing well." (*Id.*)

13

Mr. Nienberg evaluated Ms. Swick on November 21, 2019; Ms. Swick's psychiatric condition was normal. (Tr. 1157.)

Ms. Swick had a neurology consultation with Dr. Lingling Rong on November 25, 2019. (Tr. 721.) Dr. Rong noted that Ms. Swick reported having "good memory except difficulty remembering dates (no problem remembering months, year)." (*Id.*) Dr. Rong noted that Ms. Swick reported being "[s]ometime[s] depressed" but "denie[d] anxiety." (Tr. 722.) Dr. Rong's evaluation led him to conclude that Ms. Swick had no memory loss, confusion, anxiety, or mood disorder. (Tr. 728.)

Ms. Swick was evaluated by Mr. Nienberg on January 30, 2020. (Tr. 986.) Ms. Swick's psychiatric condition was evaluated as normal. (Tr. 990.)

Dr. Alan Sundheimer evaluated Ms. Swick on February 14 (Tr. 981) and March 16 (Tr. 1013), 2020. Each time, her mood and affect were normal, as were her behavior, judgment, and thought content. (Tr. 985, 1017.)

Mr. Nienberg evaluated Ms. Swick on May 21, 2020, finding that her psychiatric condition was normal. (Tr. 1035.)

Mr. Nienberg evaluated Ms. Swick on July 16, 2020, finding that her psychiatric condition was normal. (Tr. 1187.)

Ms. Swick consulted with Ms. Hannah Swint, a physician assistant, on February 11, 2021. (Tr. 1242.) Ms. Swick denied anxiety or depressed feelings during the examination. (Tr. 1246.)

Ms. Swick consulted with Dr. Kraig Kristof on March 18, 2021. (Tr. 1237.) No psychiatric issues were noted, but the records identified "depression with anxiety" in her medical history. (Tr. 1238–39.) Ms. Swick denied anxiety or depressed feelings during the examination. (Tr. 1241.)

14

Ms. Swick was evaluated by Dr. Rachel Colby on April 19, 2021, for purposes of a preoperative evaluation. (Tr. 2897.) No psychological diagnoses were noted. Dr. Colby noted that Ms. Swick was "[n]egative for dysphoric mood" and was "not nervous/anxious." (Tr. 2901.) The doctor noted a "depression screening score" of 3, although there is no interpretation in the medical record from the visit. (*See id.*) However, Dr. Colby assessed that Ms. Swick's behavior, thought content, and judgment were all normal. (*Id.*)

Ms. Swick consulted with Dr. Alan Sundheimer on May 14, 2021, for a telephone visit. (Tr. 2871.) Dr. Sundheimer did not note any psychological impressions from the visit, but the doctor noted that surgery had helped Ms. Swick's right side but not her left. (*Id.*)

Ms. Swick completed her annual physical exam on August 23, 2021, with Dr. Sundheimer. (Tr. 2845.) Dr. Sundheimer assessed that Ms. Swick had "normal mood and affect," as well as normal behavior, thought content, and judgment. (Tr. 2849.)

Ms. Swick underwent an eye exam on October 21, 2021, with  Dr. Preston Linley. (Tr. 2794.) Dr. Linley assessed that Ms. Swick was oriented and had a normal mood and affect. (Tr. 2797.)

Ms. Swick consulted with Dr. Stanley Tao regarding her eye conditions on November 8, 2021. (Tr. 2771.) Dr. Tao assessed that Ms. Swick was oriented and had a normal mood and affect. (Tr. 2773.)

Ms. Swick had a telephone visit with Dr. Sundheimer on November 15, 2021, for a prescription refill. (Tr. 2751.) No psychological impressions were noted. (*Id.*)

Dr. Sundheimer evaluated Ms. Swick on February 1, 2022. (Tr. 2695.) He noted no psychiatric or behavioral complaints. (Tr. 2698.) He further noted the following psychological impression:

15

> Alert and Oriented x4, Attentive and appropriate, constitutionally normal, displays normal mood and affect per situation, answered questions appropriately during examination, demonstrated appropriate attention during discussion, demonstrated appropriate cognitive reasoning and understanding of the medical condition by asking appropriate questions regarding the diagnosis and risks/benefits/alternatives of treatment modalities. No obvious deficits in memory, reasoning, or intellect.

(Tr. 2698.)

Dr. Sundheimer evaluated Ms. Swick again on February 18, 2022. (Tr. 2681.) He noted that Ms. Swick had normal mood and affect, behavior, thought content, and judgment. (Tr. 2685.)

Ms. Swick consulted with Dr. William Hogan on March 4, 2022. (Tr. 2646.) Dr. Hogan noted that a review of Ms. Swick's psychiatric system revealed no changes from previous visits. (*Id.*) Dr. Hogan noted that Ms. Swick displayed a normal mood and affect, was alert and oriented, was attentive and answered questions appropriately. (*Id.*)

Ms. Swick consulted with Mr. Nienberg on March 17, 2022, during a telehealth appointment. (Tr. 2616.) Mr. Nienberg assessed no psychiatric or behavioral issues. (Tr. 2620.) He noted that Ms. Swick was alert, oriented, and cooperative. (*Id.*) She displayed appropriate mood and affect. (*Id.*)

Ms. Swick consulted with Dr. Hogan on April 22, 2022, for a pain-management procedure. (Tr. 2556.) Dr. Hogan stated that a review of Ms. Swick's psychiatric system revealed no changes from previous visits. (*Id.*) Dr. Hogan also noted that Ms. Swick displayed a normal mood and affect, was alert and oriented, was attentive and answered questions appropriately. (*Id.*) Dr. Hogan further noted on May 6, 2022, that there had been no changes to these conclusions. (Tr. 2512.)

Ms. Swick had a telephone visit with Dr. Sundheimer on May 25, 2022. (Tr. 2475.) No psychiatric impressions were noted. (*See id.*)

Ms. Swick consulted with Mr. Nienberg on June 2, 2022, in a telehealth appointment. (Tr. 2463.) Mr. Nienberg noted no psychiatric or behavioral concerns. (Tr. 2466.) Curiously, he marked "yes" indicating both that Ms. Swick was "confused" and "alert and oriented." (*See* Tr. 2467.) Marking that Ms. Swick was confused was likely an error, as evidenced by the fact that Mr. Nienberg's assessment notes went on to state that Ms. Swick was alert and oriented, with appropriate mood and affect and normal judgment. (*See id.*)

Ms. Swick was evaluated by Mr. Nienberg again on June 21, 2022. (Tr. 2438.) Mr. Nienberg noted no psychiatric or behavioral concerns. (Tr. 2442.) Mr. Nienberg evaluated Ms. Swick's psychiatric condition as normal. (*Id.*)

### 5.  <u>Reconsideration Conclusions</u>

Based on the evaluations and conclusions reached at the reconsideration level, the agency affirmed that Ms. Swick was not disabled because she could perform light skilled or unskilled work, such as that required of "dog bather[s]," "key cutter[s]," or "sales attendant[s]." (Tr. 140–41.)

In April 2020, the agency informed Ms. Swick of its conclusion that "[m]edical evidence shows that you do have limitations related to your medical conditions, however we find that you retain the ability to complete a variety of activities, including some work activities[;] [i]n addition, you are able to perform tasks that are similar to some work tasks." (Tr. 165–69.)

## IV.  DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ determined that Ms. Swick had not engaged in substantial gainful activity since November 15, 2019. (Tr. 20.)

The ALJ further determined that Ms. Swick has the following severe impairments: (1) disorders of the skeletal spine status-post cervical discectomy and fusion at C4-5 and lumbar laminectomy and discectomy, (2) fibromyalgia, and (3) migraines. (Tr. 21.)

The ALJ found that Ms. Swick also had the following non-severe physical impairments:

> asthma, aneurysm, left eye hypertensive retinopathy/left branch retinal vein occlusion, bilateral posterior virtuous detachment /Meibomian gland dysfunction /bilateral retinal edema, [GERD], acquired hypothyroidism, pernicious anemia, right rotator cuff tendonitis, right first metacarpophalangeal neuroma, hypertension, dyslipidemia, urine fibroid, bilateral hip arthropathy/left hip osteoarthritis, obesity, chronic obstructive pulmonary disease (COPD), right carpal tunnel syndrome/peripheral neuropathy status-post remote volar wrist excision and decompression and release and status-post transient cerebral ischemia and bilateral pons chronic small vessel ischemia/vascular insult to the brain.

(Tr. 21.)

The ALJ explained that these impairments were non-severe because "there is no evidence of any specific or quantifiable impact on her pulmonary, musculoskeletal, endocrine, or cardiac functioning for the requisite duration due to the above conditions." (*Id.*)

The ALJ further found that Ms. Swick had the following non-severe mental impairments: somatic symptom disorder and depression with anxiety. (Tr. 21.)

The ALJ reasoned that these impairments, both individually and taken together, were non-severe because "there is no indication the claimant required psychiatric hospitalization or even emergency room treatment for her mental health symptoms," nor did Ms. Swick "require any treatment with a psychiatrist, psychologist, therapist or counselor since the prior decision." (*Id.*) The ALJ also noted that Ms. Swick's records from her primary-care appointments "also consistently showed normal findings upon psychiatric examination at appointments since the prior decision." (*Id.*)

In discussing Ms. Swick's mental impairments, the ALJ noted that Ms. Swick has no limitation with respect to understanding, remembering, or applying information. (Tr. 22.) The ALJ further concluded that Ms. Swick has a mild limitation when it comes to interacting with others because she sometimes displays irritability but is able to interact with members of the community. (*Id.*) The ALJ concluded that Ms. Swick has a mild limitation in concentrating, persisting, or maintaining pace, because she claimed to have difficulty concentrating but demonstrated the ability to complete tasks requiring concentration. (*Id.*) Finally, the ALJ concluded that Ms. Swick has a mild limitation in adapting and managing herself because she can sometimes get "agitated and frustrated" but demonstrated "intact insight and adequate judgment" that allowed her to function independently. (*Id.*)

In coming to these conclusions, the ALJ noted that Dr. Watkins's opinion—that Ms. Swick would have sporadic, mild-to-moderate limitations in her ability to respond appropriately in a work setting—was not persuasive. (Tr. 23.) The ALJ found that the record was not consistent with Dr. Watkins's opinion because numerous medical evaluations showed normal psychiatric findings over a long period of time. (*Id.*)

The ALJ also found Dr. Zake's opinion to be not persuasive because it was performed during the previous disability proceedings and, since that opinion was rendered, a number of medical records showed "benign findings" during psychiatric evaluations. (Tr. 24.)

The ALJ further found the state psychologist's opinion—that Ms. Swick's mental health conditions are not severe—was persuasive and consistent with the medical evidence. (*Id.*) The ALJ thus concluded that Ms. Swick had the ability "to engage in a relatively normal level of daily activities and interactions within her physical abilities." (*Id.*)

The ALJ noted that the ALJ considered all of Ms. Swick's conditions—both severe and non-severe—when assessing Ms. Swick's residual functional capacity. (*Id.*) After doing so, the ALJ concluded that none of Ms. Swick's impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25.)

The ALJ determined that Ms. Swick had the residual functional capacity to:

> perform light work as defined in 20 CFR 416.967(b) except: able to sit or stand alternating position for one or two minutes in the immediate vicinity of the workstation, no more frequently than every 30 minutes, while remaining on task for at least 90% of the work period. Postural limitations of no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs. Occasional stooping, kneeling, crouching, and crawling. Frequent use of the bilateral upper extremities for reaching, handling, fingering, and feeling. Environmental limitations to avoid more than occasional, concentrated exposure to moving mechanical parts and high exposed places. Additional environmental limitation to avoid more than occasional, concentrated exposure to irritants such as fumes, odors, dust, and gases.

(Tr. 26.)

The ALJ next determined that Ms. Swick is unable to perform her past relevant work as a home attendant, child monitor, or housekeeping cleaner. (Tr. 38.) However, the ALJ determined that, considering Ms. Swick's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she could perform, including work as an office helper, inspector and hand packager, or collator operator. (Tr. 39–40.)

Accordingly, the ALJ determined that Ms. Swick was not disabled. (Tr. 40–41.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Whether reviewing a decision to deny SSI benefits (undertaking the review authorized by 42 U.S.C. § 1383(c)(3), as here) or a decision to deny disability insurance benefits (reviewing

under 42 U.S.C. § 405(g)), the Court uses the same standard of review. *See* 42 U.S.C. § 1383(c)(3) (final determinations under 42 U.S.C. § 1383 "shall be subject to judicial review as provided in [§] 405(g) . . . to the same extent as . . . final determinations under [§] 405 . . . .").

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983).

In addition to considering whether the Commission's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA failed to

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B.    Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RCF to perform work in the national economy. *Id.*

### C.     Analysis

Ms. Swick contends that the ALJ erred at step two of the sequential-evaluation process when he found that Ms. Swick's mental impairments were not severe. She further contends that the ALJ failed to account for Ms. Swick's mental limitations at the subsequent steps in the evaluation.

The Commissioner responds that (1) whether the ALJ erred in finding Ms. Swick's mental impairments to be non-severe is "legally irrelevant" because the ALJ's finding of other severe impairments caused the ALJ to continue to the remaining steps of the analysis; and (2) the ALJ adequately considered mental limitations in determining Ms. Swick's residual functional capacity.

### 1.     Any error at step two is harmless.

There is no dispute that Ms. Swick cleared the first two steps in the sequential-evaluation process. At the first step, the ALJ found that Ms. Swick is not engaged in substantial gainful activity and has not been engaged in such activity since the date of alleged onset of disability. At the second step, the ALJ found that several of Ms. Swick's impairments are severe.

The first question presented by Ms. Swick's brief on the merits is whether this Court can find error based on an alleged failure of the ALJ to find *additional* reasons why Ms. Swick clears the second step.

The Court cannot find such error. That is because "[t]he Sixth Circuit has found it 'legally irrelevant' that some of a claimant's impairments are found to be non-severe, when other impairments are found to be severe . . . ." *Lane v. Kijakazi*, Case No. 6:22-187-KKC, 2024 WL 643134, * 2 (E.D. Ky. Feb. 15, 2024) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)).

Once the ALJ finds that there is one severe impairment, a claimant clears step two, and the ALJ should consider all impairments (severe and non-severe) in the next step. *See id.* Here, the ALJ found three severe impairments: (1) disorders of the skeletal spine status-post cervical discectomy and fusion at C4-5 and lumbar laminectomy and discectomy; (2) fibromyalgia; and (3) migraines. (Tr. 21.) Thus, Ms. Swick cleared the second step and—following *Astrue*—any error in failing to identify a severe mental impairment is "legally irrelevant" and harmless.

### 2.  The ALJ adequately considered mental impairments in developing the residual functional capacity.

Ms. Swick contends that the ALJ erred when it crafted a residual functional capacity for her that "did not contain a single non-exertional limitation related to [her] mental impairments." Ms. Swick points out that the ALJ assessed that Ms. Swick has several mild limitations related to her mental impairments, yet "none of these limitations are accounted for" in the RFC.

The Commissioner responds that the ALJ considered the functional limitations resulting from all of Ms. Swick's impairments when crafting the RFC and that substantial evidence supports the ALJ's decision.

An individual's residual functional capacity (*i.e.*, the most an individual can still do despite applicable limitations) is an administrative decision reserved for the ALJ. 20 C.F.R. § 1546(c). The ALJ assesses an individual's RFC based on all relevant evidence of record. 20 C.F.R. § 404.1545(a)(1). It is well-established that an ALJ need not discuss each piece of evidence or limitation considered. *See, e.g.*, *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Sec Sec.*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004)) (finding an ALJ need not discuss every piece of evidence in the record). But courts do not hesitate to remand where an ALJ selectively considers only portions of the medical evidence that place that claimant in a capable light and fails to acknowledge evidence that potentially supports a

finding of disability. *See, e.g.*, *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *see also Ackles v. Colvin*, No. 3:14CV00249, 2015 WL 1757474, at *6 (S.D. Ohio Apr. 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

Here, the Court finds that the ALJ's decision on Ms. Swick's RFC is supported by substantial evidence. While the ALJ did not include a limitation in the RFC related to Ms. Swick's mental impairments, the ALJ adequately explained why—he found that even with the mild limitations noted, Ms. Swick has the ability "to engage in a relatively normal level of daily activities and interactions within her physical abilities." Thus, the ALJ found that Ms. Swick needed no limitation beyond that necessary to accommodate her physical limitations.

The ALJ's conclusion is supported by substantial evidence. It cannot reasonably be disputed that Ms. Swick's application was heavily focused on her physical pain caused by physical conditions. The medical records are replete with notes from doctor's appointments in which Ms. Swick complained of physical pain and sought procedures to alleviate that pain. Where the records indicate that Ms. Swick was irritable, agitated, or depressed, the source of that discomfort was often related to Ms. Swick's physical pain and frustration at the inability of doctors to find a solution.

Moreover, Dr. Watkins noted that Ms. Swick denied "any history of psychiatric illness or behavioral health treatment" and was "fairly adamant that her disabilities are physical in nature."

(Tr. 1211.) While Dr. Watkins diagnosed Ms. Swick with an adjustment disorder "w[ith] some irritability," (Tr. 1213.), he specifically noted that the functional limitations stemming from that diagnosis were limited. It appeared to him that Ms. Swick's mental condition "appear[ed] to be adequate for the purposes of an ordinary eight-hour day given appropriate tasks falling within her physical limitations." (Tr. 138.)

Dr. Haskins similarly concluded that Ms. Swick's mental-health condition was not severe.

And while Dr. Zake had previously opined on certain limitations appropriate for Ms. Swick in 2016, the ALJ correctly noted that Ms. Swick had undergone a number of medical procedures since that date, and her condition now is different than it was then. With few exceptions, the medical records show normal psychiatric assessments at numerous appointments between 2019 and 2022. The few outliers that exist are consistent with the state psychologists' opinions that Ms. Swick's irritability and adjustment issues are directly tied to her pain. Ms. Swick herself testified that her difficulty concentrating and irritability arise when she is in pain.

Substantial evidence therefore supports the ALJ's conclusion that any mild limitations imposed by Ms. Swick's mental condition are adequately addressed by the physical limitations in the RFC stemming from Ms. Swick's physical conditions.

After careful review, the Court finds that substantial evidence supports the ALJ's determination, and Ms. Swick's argument that the ALJ failed to properly analyze her mental impairments is belied by the record. To the extent Ms. Swick believes the ALJ should have weighed the evidence differently and imposed greater limitations, it is not a reviewing court's role to second guess the ALJ's determination. *See Jones*, 336 F.3d at 477.

## VI.    CONCLUSION

Based on the foregoing, the Court AFFIRMS the Commissioner's decision denying Ms. Swick's application for SSI benefits.

**IT IS SO ORDERED.**


Dated:  __October 16, 2024_____            */s Jennifer Dowdell Armstrong*
                                                   JENNIFER DOWDELL ARMSTRONG
                                                   UNITED STATES MAGISTRATE JUDGE